181 So. 511

## McALLISTER v. STATE.

### 4 Div. 348.

Court of Appeals of Alabama.
May 17, 1938.

Martin & Jackson, of Dothan, for appellant.

A. A. Carmichael, Atty. Gen., and Clarence M. Small, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

The conviction of this appellant, in the lower court, was for the violation of section 5191 of the Code 1923, which makes it unlawful for any person to treat, or offer to treat, diseases of human beings without having obtained a certificate of qualification from the State board of medical examiners.

Numerous witnesses were examined upon the trial in the lower court, and at the conclusion of the testimony, upon motion of defendant, the State was required to elect as to the specific offense it would prosecute the defendant for, and did elect to prosecute the defendant for the acts complained of in the testimony relating to witness Ida May Pruett, who was the first witness examined by the State. This witness testified in substance that she lived near Webb, in Houston County. That the defendant came to her home in April of last year, and said his name was Will Green. She testified she was sick at the time and defendant asked her if Dr. Hilson was waiting upon her. That she was under the treatment of Dr. Hilson, and defendant said it was money throwed away, that he could take the case. He fixed some medicine and gave it to her. He gave her prescriptions and told her husband to carry them to the drug store and have them filled, which he did and that defendant stayed at her house for a week. That he gave her two kinds of medicine, some of which was liquid and some powder. And in response to the question "was he paid anything or not?" She replied: "Me and my husband paid him $25.00 for treatment of me." There was other testimony of like import. Mrs. Pruett further testified I never did see the defendant until he came to my house. I did not know him until then. He stayed there a week continuously at my house. He told me his name was Will Green.

Joe Pruett, the next witness, testified, among other things: "Ida Mae Pruett is my wife. I saw the defendant in April of last year. He came to my house and told me he was a doctor, and I had my wife under Dr. Hilson, and he (defendant) took the case. He told me his name was Will Green and he stayed at my house a week straight on a stretch. He gave my wife medicine. I don't know how many kinds. I made trips to Dothan to get drugs that the defendant sent me for. He wrote in a prescription what he wanted me to get. I carried it to the drug store and gave it to the drug store man, and he filled it. I carried it to the Cash Drug Store. I don't know the man's name that gave it to me. I carried it home. I gave it to the defendant. He took it, made it up, and gave it to her. The State asked the witness this question: 'How much did he charge you, if anything, for his services there?' To which action of the Court the defendant then and there excepted. The witness, answered, 'I paid him $25.00.'"

Witness Noah Bailey testified: "I saw the defendant in April last year at Joe

Pruett's house. He said his name was Will Green. Said he was a Doctor."

The defendant offered evidence as to his good character, and also testified as a witness in his own behalf, and stated, among other things:

"My name is Isiah McAllister. I heard what the witnesses testified to, and what they said about my name being Will Green. I did not have a conversation at Joe Pruett's house in April or any other time with them. I did not tell them that my name was Will Green or that I was from Canada. I did not write the prescriptions and send them to the Cash Drug Store. I did not go to the Cash Drug Store and get any prescriptions filled. My occupation is work—hard labor. I have never held myself out to be a doctor. I don't know anything about it at all. I don't pretend to know anything about it. I did not mix any of these medicines. I did not mix any of those liquids or powder that Joe and Ida Mae testified about. I did not have anything to do with any of them. In March or April or any other time I did not write a prescription for this woman. Joe and Ida Mae did not pay me $25.00"

■ Pending the introduction of the foregoing testimony numerous objections were interposed and exceptions reserved by defendant to adverse rulings of the court. There appears no merit in any of these insistences. The testimony related to the material issue involved upon the trial and was therefore admissible. It was likewise admissible as being of the res gestæ, and, as stated, no reversible error appears in any of the rulings complained of.

■ It is argued in brief, and we note throughout, that the principal ground of objection interposed in practically every instance was that the State failed to prove Ida May Pruett was suffering from disease. In this connection appellant cites the case of Frazier v. State, 19 Ala.App. 322, 97 So. 251, as direct authority to sustain this insistence. What this court had to say on this proposition does not appear to be a very good authority in this connection. On this point the court said (page 253):

"We are not, however, of the opinion that, in a prosecution under this statute, the state must either allege or prove that the person treated in fact had a disease. * * * The statute reads: 'Any person who treats, or offers to treat diseases of human beings in this state by any system of treatment, whatsoever,' etc. Acts 1915, p. 661. Whether the person receiving the treatment, or offered to be treated, has a disease or not, does not relieve the person treating, or offering to treat, from criminality. The fact that one claiming to be able to treat diseases of the human body offers to treat a person for a disease which that person did not have would be the worst kind of 'quackery,' and was one of the things aimed at by the statute. Again, if it should be held that the person offered to be treated must, in fact, be affected by the disease offered to be treated, each case would present a case for the highest and most technical investigation, involving diagnoses and other questions of pathology and scientific medicine. Such, certainly, was never in the minds of the Legislature."

■ Moreover, in the case at bar Mrs. Pruett testified, as stated above, I was sick at the time and under the treatment of Dr. Hilson, and defendant told her it was money throwed away and that he would take the case, etc. The terms sick, sickness or disease are used interchangeably, and are of practically the same import. 7 Words and Phrases, First Series, p. 6502; Webster's New International Dict., 2d Ed., "Sickness, affected with disease, ill, indisposed." "Sickness, is defined to the state of being sick, or diseased, a disease or malady."

■ Under the conflicting evidence in this case, it could not be seriously contended that the defendant was entitled to the affirmative charge. The court properly held it was without authority to direct a verdict and that a jury question was presented.

■ In a prosecution of this character the question as to whether or not the accused received remuneration for his services, is not necessarily involved. Payment, or reward, not being an essential element of the offense, it need not be averred or proven; but, as a part of the res gestæ, and also for the purpose of shedding light upon the acts complained of, it is permissible to show in connection with the testimony tending to prove the illegal acts complained of, that the accused demanded and received the fee of $25.00 for such services.

We find no error of a reversible nature on the trial of this case. The record is regular in all things. Therefore the judgment of conviction from which this appeal was taken will stand affirmed.

Affirmed.